# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *SARA A. CLARKE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:13-cv-377-GZS* |
| | ) | |
| *CAROLYN W. COLVIN, Acting* | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

## *ORDER ON MOTIONS AND REPORT AND RECOMMENDED DECISION[1]*

The plaintiff in this Supplemental Security Income ("SSI") and Social Security Disability ("SSD") appeal has filed, in addition to the statement of itemized errors contemplated by this court's applicable local rule, three motions to remand and a second motion to supplement the record.[2] I grant the defendant's motion to strike the three motions to remand, deny the second motion to supplement, and recommend that the court affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) & 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented, *inter alia*, as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 10, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] The plaintiff's First Motion to Augment the Record (ECF No. 19), which was unopposed, has been granted. ECF No. 34.

# I.     The Motions to Remand

After filing her complaint in this appeal, ECF No. 1, the plaintiff filed a motion for leave to file a 50-page itemized statement of errors.  ECF No. 14.  The limit set by this court's recently amended Local Rule 16.3(a)(2) is 20 pages.  I denied the motion. ECF No. 16.

The plaintiff then filed simultaneously an itemized statement of errors with a 20-page body of text, and the following three motions: Plaintiff's Motion for Remand for Appeals Council Errors, and New Developments (ECF No. 21); Plaintiff's Motion for Sentence Six Remand (ECF No. 22); and Plaintiff's Motion for Remand for Consolidation (ECF No. 23).

The defendant filed a motion to strike these three motions for remand.  ECF No. 24.  The defendant's motion to strike contends that the three motions for remand "address issues clearly suitable for inclusion in a Social Security itemized statement of specific errors" and represent an attempt by the plaintiff to avoid the effect of this court's denial of the motion for leave to file a 50-page itemized statement.  Defendant's Motion to Strike Plaintiff's First, Second, and Third Motions for Remand ("Motion to Strike") (ECF No. 24) ¶ 4.  I agree that the issues raised in these motions are properly included in an itemized statement of errors and, indeed, have been raised in the plaintiff's itemized statement in this case.

The plaintiff responds that "[w]e have clear precedent" for the filing of motions for remand in company with an itemized statement of errors in a case that she cites as *Brennan v. Barnhart*, Civ. 05-123-P-S (D. Me. 2007), without any further pinpoint citation or copies of the relevant documents from that case.  Plaintiff's Response to the Defendant's Motion to Strike Three of Plaintiff's Motions, Namel[]y: No[s]. 21, 22, and 23 on the Docket Sheet (ECF No. 25) at 1-2.

A review of the docket in the now-closed case of *Brennan v. Barnhart*, No. 2:05-cv-123-GZS, reveals that the attorney who represents the plaintiff in the instant case represented the

plaintiff in that case, and filed one motion to remand before filing the statement of errors and two motions to remand along with the statement of errors. However, unlike the present case, the defendant in *Brennan* did not challenge the plaintiff's election to file the motions for remand. In *Brennan*, the court reviewed the motions, held a telephone conference with counsel regarding the motions, and found the second of the three motions to have merit. Recommended Decision on Plaintiff's Motions for Remand (Docket No. 2:05-cv-123-GZS, ECF No. 23, *aff'd* ECF No. 27). The granting of that motion, on the basis of an egregious error by the Appeals Council, rendered moot the other two pending motions and the statement of errors. Recommended Decision at 3, 9. I have reviewed the plaintiff's motion to remand "for Appeals Council errors" in this case (ECF No. 21). For the reasons discussed below, I conclude that no error, much less egregious error, was committed by the Appeals Council here. *See Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). Accordingly, *Brennan* does not provide "clear precedent" applicable to the instant case.

In light of the defendant's motion to strike, it is also significant that the stated bases for two of the three motions for remand may be, and have been, raised in statements of errors submitted to this court in other cases. *See, e.g., Wilson v. Colvin*, No. 2:13-cv-197-JDL, 2014 WL 4715406, at * 1 (D. Me. Sept. 22, 2014) (new evidence presented to Appeals Council) (corresponds to ECF No. 21); and *Coutu v. Colvin*, No. 1:13-cv-00317-JAW, 2014 WL 5454536, at *3-*4 (D. Me. Oct. 27, 2014) (seeking remand based on subsequent award of benefits) (corresponds to ECF No. 23). The remaining motion for remand, ECF No. 22, merely restates arguments made in ECF No. 23 and the plaintiff's Second Motion to Augment the Record (ECF No. 20), which is addressed below.[3]

---

[3] This motion also apparently seeks remand on the ground that the defendant has not removed from the voluminous record every mention of the plaintiff's Social Security number, address, and telephone number. Plaintiff's Motion for Sentence Six Remand (ECF No. 22) at 2. Such an exercise would be pointless, since the entire record is sealed.

Finally, if I did not strike the motions for remand, I would recommend that they be denied on their merits for the following reasons.

## A. First Motion to Remand

As to the Plaintiff's Motion for Remand for Appeals Council Errors, and New Developments ("First Motion to Remand") (ECF No. 21), the applicable standard of review when an applicant for benefits challenges the Appeals Council's refusal to consider evidence submitted after the administrative law judge issues a decision is whether the Appeals Council was "egregiously mistaken" in determining that the proffered new evidence "did not present a reasonable probability of changing the ALJ's decision." *Wilson*, 2014 WL 4715406, at *1. The plaintiff does not address this standard directly, arguing instead that the Appeals Council erred in finding that the newly-submitted evidence did not relate back to a time before the date of the administrative law judge's decision. First Motion for Remand at 2-4.

New medical evidence that relates to a claimant's condition during the period considered by the administrative law judge does not automatically meet the standard of a reasonable probability of changing the judge's decision. Nonetheless, assuming *arguendo* that the evidence at issue here would have that effect, the motion still fails. The plaintiff's argument is at bottom that the newly-submitted evidence, while it was all generated after the date of the administrative law judge's decision, demonstrates disabilities so severe that they must be assumed to have existed before that date at a level that would entitle her to an award of benefits. *Id.*

In this regard, the plaintiff relies on the records of Dr. Phelps and Dr. Whelan. *Id.* Of Dr. Phelps, she says that he wrote "[s]he has had right hand tremors for several years[,]" and that his history "mentions knee trouble 'for several years[,]' *id*. at 2-3, but neither of these notes present anything beyond a recounting of the plaintiff's subjective reports. Plaintiff's First Motion to

Augment the Record ("First Motion to Augment") (ECF No. 19), attachment A (ECF No. 19-2) at 2662).[4]  At Step Two of the defendant's sequential evaluation process, which is the point at which the determination was made in this case, Record at 23, a claimant's subjective reports cannot provide substantial evidence to support a finding that a given impairment is severe.  *See, e.g., O'Brien v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00193-NT, 2012 WL 1041323, at *7 (D. Me. Mar. 23, 2012).  Therefore, contrary to the plaintiff's assertion, the cited portion of these records could not change the outcome of her application.

As for Dr. Whelan, his report begins with the statement that "[a]ll information in this report comes from Sara Clarke."  First Motion to Augment, ECF No. 19-2, at 2173.  This disqualifies the report as medical evidence for purposes of Step 2, as discussed immediately above.  The plaintiff states, without citation to any authority, that Dr. Whelan's "findings support massive disability[.]"  First Motion for Remand at 4.  To the contrary, Dr. Whelan concluded, *inter alia*, that the plaintiff could manage her own money, "has the tested cognitive ability to be able to do work that is considerably more than simple and repetitive in nature[,]" "displayed adequate long term memory and immediate recall[,]" and was "able to remain focused."  First Motion to Augment, ECF No. 19-3, at 2179, 2180.  His other conclusions are all taken directly from the plaintiff's subjective report.  *Id.*  Nothing in Dr. Whelan's report requires remand.

The plaintiff also cites in passing "the records of the Surgical Care Group," First Motion to Remand at 5, but does not specify any entry therein that "help[s] show [that] Ms. Clarke really had leg pain before the ALJ decided the case."  *Id.*  Even if a specific citation had been provided, the fact that leg pain existed at the relevant time does not make that pain a severe impairment, even under the *de minimis* standard.  Finally, the plaintiff asserts that "the Appeals Council is way off

---

[4] Indeed, this entry in the record is more reasonably read to record the plaintiff's statement that her knee or knees have "throb[bed] at night" for several years.

base to conclude [that] the new psychiatric records from McGeachy Hall (part of MMC) do not relate back and would not change the outcome[,]" because these records "are the very records the Vermont DDS used to find Ms. Clarke totally disabled starting February 1, 2013, which is only one month and 25 days after the ALJ decided this case[.]" *Id.* She contends that "the new McGeachy Hall records . . . are very similar to the older McGeachy Hall records upon which the ALJ and the Appeals Council denied her." *Id.*

That may be, but the fact that the defendant found the plaintiff to be disabled beginning two months after the date of the denial in the instant case does not necessarily mean that the "similar" records before the defendant in this case, or the subsequent records from the same provider, establish disability before the earlier date. *See, e.g., Landry v. Colvin*, No. C13-1491-RAJ, 2014 WL 1053128, at *6 (W.D. Wash. Mar. 19, 2014) (mere assertion that later diagnoses necessarily relate back to relevant time period does not establish their severity); *Dray v. Astrue*, Civil Action No. 10-397-GWU, 2011 WL 3475414, at *5 (E.D. Ky. Aug. 9, 2011) (report issued four months after date of ALJ decision does not necessarily relate back to pertinent time period).

The plaintiff is not entitled to remand on the basis of the showing made in her first motion for remand.[5]

## B. Second Motion for Remand

As noted above, this motion (ECF No. 22) merely restates arguments made in ECF Nos. 20 and 23, which are addressed below. Therefore, it may be stricken.

---

[5] The plaintiff adds that "[i]f the Acting Commissioner or this Court [is] in any way relying on the five day evidence closing rule to block any of Ms. Clarke's evidence, we have argued this applies only to Region One . . . [t]hus it is a violation of DUE PROCESS OF LAW, and Equal Protection." First Motion to Remand at 6. This is an undeveloped argument that accordingly must be deemed waived, *e.g., Oliver v. Astrue*, No. 1:11-cv-390-GZS, 2012 WL 3023329, at *6 (D. Me. June 26, 2012), and in any event the premise for the plaintiff's contention is not an argument that the defendant has raised. I note, however, that this court has rejected a similar argument in the past. *York v. Colvin*, No. 1:13-cv-00311-JDL, 2014 WL 4181616, at *3, *5 (D. Me. Aug. 21, 2014).

## C.   Third Motion for Remand

The plaintiff's third motion for remand (ECF No. 23) contends that the fact that her application for SSI and SSD benefits dated February 4, 2013, ECF No. 20-4 at 2343[6] in the District of Vermont, was granted with an effective date of February 1, 2013, requires that the instant case, based on a July 9, 2009, application, be remanded for an award of benefits and for reopening of her 2007 application with a similar award.  Plaintiff's Motion for Remand to Consolidation ("Third Motion for Remand") (ECF No. 23) at 1-2. She admits that this argument is included in her statement of errors.  *Id.* at 3.  That alone is reason enough to strike this duplicative motion.[7]

I note as well that this argument is inconsistent with the requirement that an applicant for benefits whose previous application has been denied must overcome a presumption of continuing non-disability by proving "changed circumstances indicating a greater disability." *E.g., Church v. Astrue*, No. 2:11-cv-01236 KJN, 2012 WL 4207556, at *6 & n.8 (E.D. Cal. Sept. 19, 2012) (citing Social Security Acquiescence Ruling 97-4(9), 1997 WL 742758, at *1-3).

## II.   Motion to Augment Record

The defendant opposes the Plaintiff's Second Motion to Augment the Record ("Second Motion to Augment") (ECF No. 20).  Defendant's Opposition to Plaintiff's Second Motion to Augment the Record ("Opposition to Second Motion to Augment") (ECF No. 28) at 1.   The plaintiff seeks to add some 185 pages to the administrative record, submitted as ECF Nos. 20-1 through 20-5. The plaintiff states that all of these documents "were generated (or filed) <u>after</u> the

---

[6]While this document is not part of the administrative record for reasons stated in the later text, it is the only source that the court has found that identifies the program under which the later award of benefits was made.

[7] The plaintiff states that she "objects" to the act of a claims representative who changed the alleged onset date on her Vermont application for benefits.  Third Motion for Remand at 1.  If she seeks relief from this action here, this court lacks jurisdiction over the Vermont proceeding.

ALJ decided Ms. Clarke's case that is now before this Court." Second Motion to Augment at 1 (emphasis in original).[8]

The plaintiff argues that these documents should be added to the administrative record of this case notwithstanding the fact that they were not made available to the administrative law judge nor the Appeals Council because they are "material," in that they show that the plaintiff's subsequent application for benefits was granted in Vermont, that her medical problems "continued after the ALJ and the Appeals Council acted[,]" and that the medical records "form a part of [a] continuum" of disability, which makes them "relate back" to the period at issue in this case. *Id*. at 4. Her "good cause" for not filing these documents earlier so that they could be considered by the administrative law judge and the Appeals Council is that "they did not exist at that time[.]" *Id.*

These arguments address the standard applicable to attempts to add to the administrative record evidence that was not before the administrative law judge or the Appeals Council.

> [P]rejudgment remand is only appropriate where there is good cause for the claimant's failure to introduce the evidence at the administrative hearing and the evidence in question is "material," as in "necessary to develop the facts of the case fully." New evidence of an infirmity or impairment is not automatically material. The party seeking remand must show that the evidence is not merely cumulative and that consideration of the evidence is essential to a fair hearing; that the earlier decision might reasonably have been different had the evidence been considered by the Commissioner.

*McDonald v. Social Sec. Admin. Comm'r*, No. 1:09-cv-473-JAW, 2010 WL 2680338, at *2 (D Me. June 30, 2010) (citation and internal quotation marks omitted).

---

[8] The defendant disagrees, pointing out that pages 2245-55 in ECF No. 20-1 are all dated well before the date five days before the administrative hearing chosen by the plaintiff as a cutoff date, Opposition to Second Motion to Augment at 2-3, and that pages 2250-51 and 2253-56 in ECF No. 20-1 are duplicates of pages 1534-37, 1542-43, and 1556-57 of the existing administrative record. These records by definition, and by the terms of the plaintiff's own argument, cannot be "new" and may not be added to the administrative record. The plaintiff acknowledges this in her reply. Reply at 4.

The plaintiff's conclusory assertion that the outcome in this case will necessarily be different if the documents presented with her successful, subsequent Vermont application are admitted, merely because that application was successful, Second Motion to Augment at 4; Plaintiff's Reply to Defendant's Response to Plaintiff's Second Motion to Augment the Record ("Reply") (ECF No. 33) at 1-4, is incorrect. *See, e.g., Bowden v. Colvin*, No. 1:13-cv-201-GZS, 2014 WL 1664961, at *1 (D. Me. Apr. 25, 2014) (and cases cited therein) (rejecting this argument, particularly where plaintiff "has made no effort" to demonstrate that the specific evidence is both new and material); *McDonald*, 2010 WL 2680338, at *2. The First Circuit has recently agreed in a case in which the subsequent decision awarded benefits beginning on the day after the date of the decision in the first application. *Gill v. Colvin*, No. 13-1792 (1st Cir. Apr. 9, 2014), slip op. at 4-5.

The plaintiff's contention that the subject records that predate the cutoff date of January 3, 2012, which she chose to differentiate her two applications, Second Motion to Remand at 3, are new, material, and could not have been presented in the earlier proceeding because "counsel . . . did not know about them," Reply at 4, is also unavailing. Were this argument accepted, any applicant for benefits could obtain a remand merely be presenting additional records that his or her attorney, no matter how diligent that attorney might or might not have been, can say that he or she did not know about at the time. The process of applying for Social Security benefits cannot be so open-ended.[9]

Similarly, the fact that the plaintiff's alleged medical problems continued after the date of the administrative law judge's decision, Second Motion to Augment at 4, says nothing about the

---

[9] The plaintiff also states that her subsequent Vermont application was granted "based only on her latest McGeachy Hall records." Reply at 4 (emphasis in original). If that is the case, her argument that any other additional documents that she now seeks to add to the administrative record would necessarily change the outcome of her earlier application must fail.

severity of any of those problems before the date or dates relevant to the earlier application that is at issue here. If, as the plaintiff contends, any alleged medical problems that continue after an individual's application for benefits has been denied create a "continuum" so that all subsequent medical records "relate back" to the period before the denial and thus require reopening of that application, *id.*, no application for benefits would ever be closed.

Finally, the plaintiff repeats and enlarges somewhat her argument that the fact that 20 C.F.R. § 405.331(a), requiring that all documents upon which the applicant for benefits relies be submitted no later than five business days before the date of the hearing before the administrative law judge, is currently being applied by the defendant only in the New England region violates the due process clause of the Fifth Amendment to the United States Constitution. Reply at 5. Because this argument is first raised with respect to this motion in the plaintiff's reply memorandum, it will not be considered by the court. *In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 10 n.5 (D. Me. 1991); *Brennan v. Barnhart*, No. 05-123-P-S, 2007 WL 586794, at *6 (D. Me. Feb. 20, 2007).

The plaintiff's second motion to augment the record is denied.

### III.    The Statement of Errors

The plaintiff contends that the administrative law judge wrongly denied her application at Step 2 of the sequential evaluation process, for a number of reasons; that the Appeals Council wrongly concluded that new evidence submitted by the plaintiff after the administrative law judge issued his decision did not relate back to the time period relevant to that decision; that the administrative law judge wrongly refused to consider reports of two physicians; that the administrative law job wrongly failed to reopen the plaintiff's 2007 application for benefits; that the administrative law judge wrongly interpreted certain factual evidence; that the administrative law judge was biased against the plaintiff; that the decision awarding benefits to the plaintiff in

Vermont based on a subsequent application requires that this case be remanded for an award of benefits; that the administrative law judge wrongly rejected the opinion of Dr. Newcomb because the Appeals Council has accepted Dr. Newcomb's opinion in the past; and that the administrative law judge treated medical opinions improperly. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1560, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements for SSD only through December 31, 2011, Finding 1, Record at 19; that she engaged in substantial gainful activity from January 2008 through January 2009 and from November 2009 through "at least the date of the hearing," January 11, 2012, Finding 2, *id*.; that there was no continuous 12-month period during which the plaintiff had not engaged in substantial gainful activity, Finding 3, *id*. at 23; that she suffered from hypothyroidism and hypertension, which were well controlled with medication, diffuse joint pain and lower back pain, an affective disorder, an anxiety-related disorder, and a substance dependence disorder, Finding 4, *id*.; but that these impairments, considered separately or in combination, had not significantly limited and were not expected to limit significantly her ability to perform basic work-related activities for 12 consecutive months, so that none of the impairments was severe, Finding 5, *id*.; and that, as a result, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time through the date of the decision, January 25, 2012, Finding 6, *id*. at 31.

The Appeals Council declined to review the decision on December 12, 2012, Record at 8-11, but then reopened the review on its own motion due to its failure to provide the plaintiff's attorney with a requested copy of the recording of the administrative hearing in a timely manner,

*id.* at 249-50. The Appeals Council again declined to review the decision on August 15, 2012, *id.* at 1-4, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The parties agree that the denial in this case took place at Steps 1 and 2 of the sequential review process. Statement of Errors (ECF No. 17) at 1; Defendant's Written Response to Plaintiff's Statement of Errors ("Opposition") (ECF No. 35) at 2. At Step 1, benefits are unavailable for those periods during which a claimant engaged in substantial gainful activity. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

**A. Discussion**

**1. Step 2 Standard**

The plaintiff first contends that the administrative law judge applied the wrong standard to his analysis at Step 2 of the sequential evaluation process. Specifically, she asserts that "the ALJ has given too much weight to the word 'significant'" instead of the "*de minimis*" standard established by the First Circuit. Statement of Errors (ECF No. 17) at 1. She admits that the applicable regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), use the word "significant," but argues that, if the administrative law judge's use of the term is correct, the regulations have been "overruled" by *McDonald. Id.*

The regulations at issue provide:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.

20 C.F.R. §§ 404.1520(c), 416.920(c). The administrative law judge found that "[t]he claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months[.]" Record at 23. This is a correct use of the regulatory language.

The plaintiff cites pages 17 and 31 of the record as the instances of allegedly inappropriate use of the word "significantly" by the administrative law judge. Statement of Errors at 1. On page 17, the administrative law judge merely recites the definition found in the regulations quoted above. At page 31, the administrative law judge uses the word twice:

> The conclusion that the claimant does not have a medically determinable physical or mental impairment, or a combination of physical or mental

> impairments, that significantly limits her ability to perform basic work-related activities is supported by the medical evidence of record, objective medical findings, course of treatment, medical opinion evidence, employment records, third-party witness statements, hearing testimony, and the undersigned's thorough review of the evidence of record.
>
> In sum, the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit her ability to perform basic work activities. Thus, the claimant does not have a severe impairment or combination of impairments.

Record at 31.

Neither of these uses of the word "significantly" constitutes an incorrect application of the regulatory language, nor is it inconsistent with the gloss on the regulatory language created by the First Circuit in *McDonald*. The plaintiff assumes that "significant" and "*de minimis*" necessarily are mutually exclusive concepts, but, in the context of Social Security law, that is not the case. This court has repeatedly required an applicant for benefits to demonstrate significant limitation on the ability to perform work-related activities when the applicant challenges a finding of non-disability at Step 2, impliedly finding that requirement consistent with the *de minimis* language of *McDonald*. *See, e.g., LaBonte v. Astrue*, Civil No. 09-385-P-S, 2010 WL 2024895, at *2 (D. Me. May 18, 2010); *Hagar v. Astrue*, No. 06-229-P-S, 2007 WL 3023586, at *3 (D. Me. Oct. 12, 2007). Indeed, the First Circuit said six years after *McDonald* that "[t]o survive step two, claimant must prove that his impairments would have *more than* minimal limiting effects on his ability to perform basic work activities[,]" citing *McDonald*. *Tonev v. Sullivan*, 977 F.2d 566 (table), 1992 WL 288380, at *2 (1st Cir. Oct. 15, 1992) (emphasis in original). Under *McDonald*, it is the showing that the claimant must make that is *de minimis*, not the effect of the alleged impairment on his ability to perform work-related activities. Given that significant distinction, there is no contradiction between the two terms.

If the plaintiff means to argue that the administrative law judge must recite the *McDonald* language in every Step 2 analysis, such a robotic requirement would make little sense, particularly as *McDonald* only serves as precedent in the states that make up the First Circuit.

In this section of her statement of errors, the plaintiff also challenges the administrative law judge's conclusion that "from January 2008, and continuing through the date of hearing, there has not been a 12-month period, during which[] the claimant has not engaged in substantial gainful activity." Record at 19. He later observes that

> [t]he record reveals no evidence of work activity from August 27, 2005, the alleged onset date, and continuing through 2007. The claimant argues that this is a period of at least 12-continuous months [] during which she did not engage in substantial gainful activity and is therefore entitled to a closed period of disability (Exhibits 25E, p.2 and 47E, p.2). However, as discussed in detail below, during this period, the claimant's medically determinable impairments were "non-severe," as they had no more than a minimal effect on her ability to perform basic work-related activities on a regular and continuing basis.

*Id*. The plaintiff's argument, Statement of Errors at 1, ignores the final sentence of this excerpt, asserting that this period with no work activity "is a shorter period, but well over the 12 month requirement of 20 CFR § [404.]1505(a)." That fact makes no difference where, as here, the administrative law judge has also found that no severe impairment existed during the period of time at issue.

The plaintiff faults the administrative law judge for "[v]ery conveniently" failing to mention "the fact that Ms. Clarke was so depressed in 2003 that she attempted suicide and was hospitalized following the attempt." *Id*. at 2. However, the plaintiff has alleged a date of onset of disability of August 27, 2005, Record at 16, and, therefore, the suicide attempt was not within the relevant period of time. The plaintiff next lists medical evidence that she apparently believes would require a finding that she suffered from one or more severe impairments from her alleged

onset date through July 2008, Statement of Errors at 2-4, but the administrative law judge found

that, after January 2008, the plaintiff was engaged in substantial gainful activity, Record at 19,

which makes the issue of the existence of one or more severe impairments after that date irrelevant.

As to the earlier period, the administrative law judge performed an extensive analysis of the

plaintiff's medical records, including those which she now cites, and concluded that none of the

records supported a conclusion that any of the alleged impairments were severe. *Id.* at 24-26. The

plaintiff offers nothing beyond her own characterizations of these records as "serious" and

"significant," Statement of Errors at 2, and her own testimony, *id.* at 3-4, to support her necessarily-

implied contention that the administrative law judge was required to find that these impairments

were severe during the relevant time period. That is not sufficient to require remand. *See, e.g.,*

*Libby v. Astrue*, No. 2:10-cv-265-GZS, 2011 WL 2531152, at *2 (D. Me. June 24, 2011).

At oral argument, plaintiff's counsel cited *Coryell v. Colvin*, Civil No. 1:13-cv-00020-JE,

2014 WL 2949060 (D. Or. June 30, 2014), an opinion that was issued after he filed his statement

of errors, as authority for remanding a Step 2 decision without consideration of the concept of

harmless error. That opinion is readily distinguishable.

The plaintiff in *Coryell* was seeking SSD benefits with a date last insured of March 31,

1995. *Id.* at *3.[10] After a hearing, the administrative law judge found that the plaintiff had

medically determinable impairments of bipolar disease, pain disorder, and fibromyalgia, but that

none of them had been severe at the relevant time. *Id.*

The magistrate judge held that the administrative law judge's failure to refer to portions of

the record that did not support his conclusions required remand. *Id.* at *4. Citing Ninth Circuit

case law, he also held, without explanation, that treatment notes from a provider who only began

---

[10] The plaintiff filed her application on January 26, 2007. 2014 WL 2949060 at *1.

to treat the plaintiff after the date last insured were "relevant," *id*. at \*6, \*7, quoting a 2007 decision of the Ninth Circuit for the proposition that medical reports "are inevitably rendered retrospectively." *Id*. at \*7. Again citing Ninth Circuit precedent, he also held that remand was warranted because the administrative law judge did not "provide clear and convincing reasons" for rejecting the opinions of physicians who treated the plaintiff in 2007-2009. *Id*. at \*8.

Without more, the standards applied by the court in *Coryell* differ significantly from those applicable in this district. Here, pursuant to the directives of the First Circuit, the question is not whether an administrative law judge has ignored "relevant" evidence, but rather whether the administrative law judge's conclusions were supported by substantial evidence. The First Circuit has not adopted the proposition that all medical reports are rendered retrospectively, *see, e.g.,* *Parker v.* Colvin, Civil No. 2:13-cv-286-DBH. 2014 WL 3533323, at \*3 (D. Me. July 15, 2014),[11] nor does it required "clear and convincing" reasons for rejecting the opinions of treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (medical opinion of treating source may be rejected for good reasons); *see also, e.g., Briggette v. Colvin*, No. 2:13-cv-301-GZS, 2014 WL 3548992, at \*3-\*5 (D. Me. July 17, 2014).

*Coryell*, an opinion of a district court from another circuit, is not binding authority in this court, and I do not find it persuasive, given the differing applicable legal standards.

## 2. Substantial Gainful Activity

The plaintiff contends that the administrative law judge wrongly found that her work after her alleged onset date constituted substantial gainful activity, which disqualified her from

---

[11] In addition, retrospective medical opinions alone will usually not suffice unless the claimed date of onset of disability is corroborated, as by statements from lay observers. *Savoy v. Massanari*, No. 01-73-B, 2001 WL 1502585, at \*5 (D. Me. Nov. 26, 2001)

eligibility for benefits during that period. Statement of Errors at 4-14. I will address this argument in the subsets by which the plaintiff has organized it.

First, the plaintiff asserts that the administrative law judge "incorrectly found Ms. Clarke worked at Rumford Hospital until January 2009." *Id.* at 4. In fact, she contends, this is "impossible," because she "was a prisoner in the Rockingham County Department of Corrections . . . starting at 11:40 in the morning on September 15, 2008." *Id.* at 4-5. The finding to which the plaintiff refers is a statement that "[a]lthough she reported leaving [a position with Correctional Medical Services that began in February 2008], on March 12, 2008, she obtained a position with Rumford Hospital, and worked at this position until she was terminated in January 2009 (Exhibit 17E, p.2 and 33E, p.1)." Record at 29. Review of the cited pages of the record reveals that the administrative law judge did err in stating that the plaintiff actually worked at Rumford Hospital beyond September 16, 2008, *id.* at 403, 498, although the plaintiff herself noted that she was "officially terminated 1/5/09" and was paid $43.31 in December 2008. *Id.* at 403.

This three-month discrepancy, if such it was, is not fatal, however, because, by her own report, the plaintiff worked at Rumford Hospital over a period of 6 months and 4 days, *id.*, and she does not dispute that she earned $18,465.01 in 2008, *id.* at 309, 403, well above the level of substantial gainful activity for that year. Program Operations Manual System ("POMS") § DI 10501.015, Table 2. Contrary to the plaintiff's contention, the administrative law judge's "reliance on a wrong ending date" did not constitute "a denial of the right to a fair and impartial hearing" nor "a violation of her right to DUE PROCESS OF LAW." Statement of Errors at 6 (capitalization in original).

The plaintiff contends that her work at Rumford Hospital constituted an unsuccessful work attempt,[12] and thus could not be considered substantial gainful activity. Motion at 5. However, "an unsuccessful work attempt is work that occurs after a significant break in the continuity of work, lasts less than six months, and is stopped or reduced such that earning levels fall below the defined substantial gainful activity levels." *Oberg v. Colvin*, No. 6:13-cv-01004-SI, 2014 WL 3695609, at *5 (D. Or. July 24, 2014); *see also* 20 C.F.R. §§ 404.1574(c) & 416.974(c). The plaintiff's earnings from Rumford Hospital were above the defined substantial gainful activity levels, and she did not show that she stopped working at Rumford Hospital because of her impairments or because of the removal of any special conditions that took into account her impairments and thus permitted her to work. 20 C.F.R. §§ 404.1575(d)(2), 416.975(d)(2). All that the plaintiff has demonstrated in this case is that she stopped working at Rumford Hospital because she began to serve a jail sentence. *See Howes v. Astrue*, Civil No. 08-196-B-W, 2009 WL 232456, at *5 (D. Me. Jan. 29, 2009). In addition, she has made no attempt to demonstrate that her work at Rumford Hospital occurred after "a significant break in the continuity of . . . work." 20 C.F.R. §§ 404.1575(d)(2), 416.975(d)(2).

The plaintiff also argues that her "work as a nurse (first at Rumford Hospital, later at Milestone, and still later at Maine Medical Center) were sub-standard or 'sheltered' work efforts[.]" Itemized Statement at 4. This is so, she contends, because "her efforts were not up to standard, and thus were sheltered work under 20 C.F.R. §404.1471 through §404.1474[.]" *Id.* In support of this contention, she cites her own testimony; a state-agency physician's opinion, dated

---

[12] The plaintiff admits that "[t]he Unsuccessful Work Attempt issue relates to Steps Four and Five of the disability analysis, but the ALJ did not reach those steps." Statement of Errors at 5. If this court upholds the administrative law judge's conclusion at Step 2, no consideration of Steps 4 and 5 can be undertaken. If the court rejects that conclusion and remands the case, it should not render an advisory opinion on the possible analysis at Steps 4 and 5, which are not before the court.

11 months before she began to work at Rumford Hospital that her alcoholism met the Listing for alcohol abuse; a treating psychiatrist who found "major mental impairment" while the plaintiff was working at Rumford Hospital; the administrative law judge "distort[ion[" of a nurse's note about the plaintiff while she was working at Milestone; and the fact that Maine Medical Center personnel records show that the plaintiff made two nursing mistakes and was being supervised while she worked there. *Id*. at 6-14.

Of course, if the mere fact that an employer of an applicant for benefits criticized the applicant's work as not up to standard rendered that work "sheltered" for purposes of Social Security benefits, a great number of applicants would be eligible for benefits. Social Security benefit programs are not designed to support all individuals whose work performance is less than average. The applicable regulations provide that "[w]e consider how well you do your work when we determine whether or not you are doing substantial gainful activity." 20 C.F.R. §§ 404.1573(b), 416.973(b). "If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level." *Id*. The plaintiff has made no such showing. Rather, she asks the court to infer that this was the case from the fact that she may have been suffering from alcohol abuse and an unspecified "major mental impairment" at the relevant time,[13] such that her work necessarily was so sub-standard that it was in effect "sheltered." Itemized Statement at 7. To do so would be to do precisely what the administrative law judge, and, indeed, this reviewing court, is forbidden to do: draw a conclusion as to the effects of an impairment from the raw medical evidence. *See, e.g., Enman v. Colvin*, Civil No. 2:13-cv-307-DBH, 2014 WL 5394577, at *3 (D. Me. Oct. 21, 2014).

---

[13] In addition, the administrative law judge gives good reasons for rejecting the opinion of Dr. Schniewind, Record at 28, upon which the plaintiff relies in this regard. Statement of Errors at 7.

To the extent that the plaintiff relies on her own testimony in this regard, the administrative law judge found her testimony less than credible. Record at 22. The plaintiff does not challenge this finding in her statement of errors. The administrative law judge discusses the plaintiff's argument that her work at Rumford Hospital, Milestone, and Maine Medical Center were all sheltered work and gives his reasons for rejecting that claim in substantial detail. *Id*. at 20-22. The plaintiff's argument ignores the extensive evidence that is inconsistent with her position. Bearing in mind that the standard for this court's review requires only that there be substantial evidence to support the administrative law judge's decision, the plaintiff's oversight is significant.

In this case, the evidence supporting the administrative law judge's decision includes a Work Activity Questionnaire, designed specifically to address claims that a particular work experience was subsidized or an unsuccessful work attempt "under Social Security rules," *id*. at 396, completed by a human resources coordinator at Rumford Hospital which states that the plaintiff completed all of the usual duties required for her position, without special assistance; regularly reported for work as scheduled; completed her work in the same amount of time as did other employees in similar positions; was given no special assistance; was as productive as other employees in similar positions; and was paid no more per hour than another employee in a similar position. *Id*. at 399-400. The form addresses each of the examples of possible special work conditions that may support a finding that a claimant's past work in fact took place in a "sheltered workshop." *Compare* 20 C.F.R. §§ 404.1573(c), 416.973(c) *with* Record at 399-401.

The plaintiff asserts that this evidence must be rejected because Rumford Hospital had a "motive to deny that nursing services provided to the public were not up to standard." Statement of Errors at 8. This is rank speculation with no basis in the record, and was correctly rejected by the administrative law judge. The same is true of the plaintiff's reason for her contention that the

court must reject the testimony of the vocational expert at her evidentiary hearing to the effect that hospitals do not tolerate sub-standard work, Record at 69, 82-83, characterizing that testimony as "preposterous." Statement of Errors at 14. The testimony of the well-qualified vocational expert, Record at 223-27, is, on the showing made, quite the opposite.

The plaintiff admits that she has not submitted any employment records from Milestone and relies entirely on her own testimony. Statement of Errors at 8-9. I have already concluded that the administrative law judge did not wrongly reject the plaintiff's testimony in this regard. In addition, the plaintiff's attack on a reference by the administrative law judge to a note written by her treating therapist, Jean Burton, N.P., as evidence that the plaintiff did well in her employment there, *id*. at 9, is unwarranted. The important entry in that record is the plaintiff's report that she "got good reviews" while working there. Record at 1978. It is not accurate to characterize as "distorting evidence," Statement of Errors at 9, the administrative law judge's observations that "there is no evidence that her work with Milestone was an unsuccessful work attempt or in any way a sheltered work environment[,]" *id*. at 21. The only such evidence in the record is the plaintiff's own testimony, which the administrative law judge supportably rejected.

Finally, the plaintiff devotes four pages of her statement of errors to her argument that her employment records from Maine Medical Center demonstrate that her work there was performed in a sheltered work environment. Statement of Errors at 10-14. Again, the plaintiff relies primarily on her own testimony. The Maine Medical Center records reveal that the first unit to which she was assigned was not the best fit for her, but that her second assignment was well handled. Record at 539. Contrary to the plaintiff's interpretation, this does not demonstrate work so sub-standard that special work accommodations had to be made for the plaintiff.

The plaintiff is not entitled to remand on the basis of allegedly sheltered work.

### 3.  New Evidence

The plaintiff's next proffered reason for remand is an argument that new evidence that she submitted to the Appeals Council in this case requires that this application be remanded, as the Appeals Council wrongly refused to consider this evidence.  Statement of Errors at 14-15.  She cites no authority in support of this argument.  I have already rejected this argument in connection with the plaintiff's motion to add this evidence to the administrative record.  Accordingly, the plaintiff takes nothing from this renewed argument.

### 4.  Opinions of Drs. Graf and Newcomb

The plaintiff complains that the administrative law judge refused to allow her to "testify point by point about her functional impairment—using the function forms of Dr. Newcomb and Dr. Graf."  *Id*. at 15.  She asserts that the administrative law judge "conceded" that, if the forms completed by Dr. John Newcomb and Dr. Frank Graf, Record at 989-1002, 1898-1905, were fully credited by the administrative law judge, the plaintiff "is disabled."  Statement of Errors at 15; *see* Record at 92-94.  Therefore, she argues, "[i]t was unfair for the ALJ to cut off" her testimony about each of the points made by the physicians on those forms.  Statement of Errors at 15.  Without any citation of authority, she asserts that this action deprived her of a fair and impartial hearing and "is a violation of DUE PROCESS of law."  *Id*. at 15-16 (capitalization in original).

In fact, it did neither.  First, the administrative law judge did not prevent the plaintiff from testifying about each of the points made by the two doctors in whatever manner her attorney wished.  Indeed, her present counsel, who also represented her before the administrative law judge, agreed that this proposed testimony was not necessary once the administrative law judge said that he would assume that she would not testify differently from the findings of these two physicians.  Record at 94.  Given that statement by the plaintiff's attorney, she cannot now be heard to contend

that, had her proposed testimony been given, it would have changed the outcome of this matter, which is the showing that she must make in order for any such error, if error it was, to be other than harmless. In addition, the administrative law judge gave sufficient reasons for his rejection the consulting opinions of Dr. Newcomb[14] and Dr. Graf. *Id.* at 28-29, 31.

Nothing further was required by Social Security law or the Constitution.

### 5. Re-Opening 2007 Application

The plaintiff argues, very briefly, that the administrative law judge "may" have "compounded his error" at Step 2 of the sequential review process by failing to mention her request that he re-open her 2007 application for benefits and by failing "to comply with Hallex Section I-2-9-80 concerning re-opening." Statement of Errors at 16. Her presentation of these arguments is so brief and conditional[15] that the arguments must be deemed to have been waived. *Clifford v. Colvin*, No. 1:14-cv-275-DBH, 2014 WL 5782451, at *1 n.2 (D. Me. Nov. 6, 2014); *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *5 (D. Me. May 8, 2014).

At oral argument, counsel for the defendant pointed out that the administrative law judge in fact did re-open the 2007 application, because he considered and discussed evidence going back to a date in 2005 that was the alleged date of onset of disability connected with that application. Record at 24-25. Thus, even if the argument had been sufficiently presented, there was no error, because, as a practical matter, the administrative law judge granted the re-opening request *sub silentio*.

---

[14] This conclusion also disposes of the plaintiff's later additional argument, unsupported by citation to authority, that the administrative law judge was required to "accept" Dr. Newcomb's opinion because his opinion was accepted by the Appeals Council in an earlier case "as the sole basis to overturn the decision of this same ALJ[.]" Statement of Errors at 19.

[15] Each issue is stated in the following manner: "The administrative law judge may have further compounded his error (namely his Step Two denial) by failing to" act in a certain manner. Statement of Errors at 16 (emphasis in original).

### 6. Hand Tremor

The following is the entire argument proffered by the plaintiff on this issue.

> **VIII. MS. CLARKE'S RIGHT HAND TREMOR WAS MISSED BY THE ALJ (AND BY UNDERSIGNED COUNSEL); THIS IS CRUCIAL TO MS. CLARKE'S DISABILITY CLAIM, SO SHE DID NOT GET A FAIR AND IMPARTIAL HEARING, OR DUE PROCESS OF LAW.** Ms. Clarke's right hand tremor was briefly mentioned in the record before the ALJ. (See a handwritten bottom page note, R 1,049[.]) She is right handed. (R 439) This tremor was developed during her new Application by Dr. Phelps. (AA 61) In fairness this should have [been] considered. Ms. Clarke clearly testified that working as a Registered Nurse, she had trouble putting IV's into the veins of patients and finding fetal heart beats. (R 60)[.]

Statement of Errors at 16.[16]

It is bedrock Social Security law that issues and claims not raised before the administrative law judge cannot be raised for the first time in an appeal from the commissioner's decision. *E.g., Mills v. Apfel*, 84 F.Supp.2d 146, 150 (D. Me. 2000). Clothing the alleged omission in constitutional language does not make the principle inapplicable. An administrative law judge cannot be expected to comb often voluminous administrative records for a single mention of an impairment that might, with further investigation, become significant, particularly where, as here, the claimant is represented by an attorney at the administrative hearing.

### 7. Timing Error

The plaintiff next points out that the administrative law judge erred when he stated that the plaintiff worked at Milestone from May 2010 through October 2010, when she began to work at Maine Medical Center, Record at 30, and contends that "[t]his error is crucial" because the

---

[16] I note that the handwritten note, only a portion of which is legible, on which this argument is based appears on a printed form entitled "Tri-County Mental Health Services/DIAGNOSTIC REVIEW FORM." Record at 1049. It could not serve as evidence of the existence of such an impairment in any event, as such evidence must come from a medical professional with the appropriate qualifications to diagnose it. 20 C.F.R. §§ 404.1528(a), 416.928(a); *Raymond v. Astrue*, No. 1:12-cv-92-DBH, 2012 WL 6913437, at *6 (D. Me. Dec. 31, 2012).

administrative law judge "relies on this error to find he does not believe Ms. Clarke's allegation of leg pain." Statement of Errors at 17. She asserts that her employment with Milestone actually ended "in February 2011." *Id.* She then asserts that "[t]hat's about nine months [between Milestone and Maine Medical Center (MMC)] before her start at MMC on October 18, 2010. So, Ms. Clarke was out-of-work for nine months; she did <u>not</u> go right from one work attempt to the next!!!" *Id.* (citations omitted).

This argument is inherently contradictory and must be incorrect. The plaintiff testified that she worked at Milestone from the end of May 2010 through February 2011. Record at 55. She also testified that she began work at Maine Medical Center on October 18, 2010. *Id.* at 55-56. The start date at Maine Medical Center is confirmed by a report from that hospital. *Id.* at 539. There is no gap between work for the two employers; rather, there is an overlap.[17]

No error has been shown in this regard.

### 8. Bias of the Administrative Law Judge

After noting that she was so upset by the administrative law judge at the hearing that she "interrupted the proceedings" to say that she hoped that her testimony was being taken seriously, the plaintiff asserts that the administrative law judge "came to the hearing[] apparently determined to deny Ms. Clarke at Step One." Statement of Errors at 17. In support of this accusation, she cites the administrative law judge's statement that he was "concerned about the S[ubstantial] G[ainful] A[ctivity]" and that he "was interested in work activity after August 2005." *Id.* However, every applicant for SSI and SSD must meet his or her burden at Step 1 to show that he

---

[17] In this section of her statement of errors, the plaintiff faults the administrative law judge for "selecting (or 'cherry picking') evidence to support his denial of Ms. Clarke's claim." Statement of Errors at 17. The applicable legal test on this appeal is not whether there is evidence in the record that does not support the administrative law judge's decision, or even whether more evidence does not support the decision than does support it, but only whether the decision is supported by substantial evidence. *Mardorf v. Astrue*, No. 1:11-cv-81-GZS, 2012 WL 292311, at *3 (D. Me. Jan. 30, 2012). The plaintiff's argument in this regard does not demonstrate error, let alone reversible error.

or she did not engage in substantial gainful activity during the period for which benefits are sought. 20 C.F.R. §§ 20.1520(b), 416.920(b). That an administrative law judge, who has before him or her the plaintiff's record of employment income, asks about such employment, particularly when it appears on its face to exceed the regulatory limit for substantial gainful activity, is no evidence of bias.

This is true even if the administrative law judge "asks questions about whether her work effort was sub-standard or 'sheltered.'" Statement of Errors at 17-18. After all, it was the plaintiff's attorney who raised that issue. Record at 49-50, 416 (letter dated July 9, 2009, from plaintiff's attorney). Beyond this, the plaintiff supports her bias allegation with the facts that the administrative law judge "found no evidence of sub-standard work," "recessed the hearing and printed the seven pages of [the plaintiff's] personnel file from Maine Medical Center, but then found no evidence of sub-standard work[,]" and relied on "the preposterous testimony of the Vocational Expert to the effect that hospitals don't allow sub-standard work[[.]" It is the job of the administrative law judge to weigh the evidence; the fact that he rejects the claimant's position does not equate to bias against the claimant, particularly where, as here, each of the instances of alleged bias described by the plaintiff has already been addressed and rejected in this recommended decision.

Finally, the plaintiff characterizes as "[c]lear acts of bias" the administrative law judge's refusal to hear her testimony on "functional impairment and Unsuccessful Work Attempt, and then decid[ing] these issues against her." Statement of Errors at 18. I have already dealt with, and rejected, these characterizations of the administrative law judge's actions. Accordingly, no bias has been demonstrated, let alone sufficient evidence to overcome the presumption that an administrative law judge is unbiased, which requires a demonstration "that the decisionmaker

displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Strout v. Astrue*, Civil No. 08-181-B-W, 2009 WL 214576, at *5 (D. Me. Jan. 28, 2009) (quoting *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007)).

The plaintiff is not entitled to remand on this basis.

### 9.  The Vermont Decision

The plaintiff argues vigorously that the decision of the disability determination service in Vermont to grant her subsequent application for benefits is inconsistent with the denial of the instant application, which must therefore be remanded. Statement of Errors at 18-19. The sole authority cited by the plaintiff in this regard is the unreported recommended decision in *Millett v. Bowen*, Civil No. 88-0120-P, (D. Me.  December 5, 1988) ("Slip Op.") (ECF No. 17-1). *Id*. at 18.

As to that part of the administrative law judge's opinion that is based on a finding of substantial gainful activity, a Step 1 determination, Finding 1, Record at 19, the Vermont decision is not comparable to the instant case, because the Vermont decision is based on a finding that the plaintiff suffered from mental impairments that were disabling, a finding at Step 5 of the sequential evaluation process. Decision of the Appeals Council (ECF No. 17-2) at [6]-[7].

With respect to that portion of the administrative law judge's decision in the instant case that was made at Step 2, as I noted above, the Vermont award could only have been made after a showing by the plaintiff that her alleged impairments had changed for the worse since the time relevant to the previous application. Further, *Millett* is distinguishable.

In *Millett*, Judge Cohen recommended remand because the administrative law judge stated that he relied on the testimony of a medical expert whose testimony was actually inconsistent with the administrative law judge's conclusion. Slip Op. at 5-6. Judge Cohen found that "there is no substantial evidence to support a finding that a change in the plaintiff's physical impairments

rendered him disabled on and after August 19, 1986 but not before that date." *Id*. at 7. In the instant case, the plaintiff argues only that a finding that she was disabled as of the day after the administrative law judge's decision in the instant case[18] must mean that she was disabled before that date. Statement of Errors at 18-19. The *Millett* decision is inconsistent with that argument.

The plaintiff is not entitled to remand on this basis. *See also Gill*, slip op. at 4-5.

### 10. Priority of Medical Opinions

The plaintiff's final substantive argument is that the administrative law judge violated 20 C.F.R. § 404.1527 –and, presumably, 20 C.F.R. § 416.927—by rejecting the "disability slip" from her treating psychiatrist, Dr. Gold; the opinion of another treating psychiatrist, Dr. Whitesell, that her symptoms precluded work; and the opinions of two "evaluating" physicians, Drs. Graf and Newcomb. Statement of Errors at 19-20.

The cited regulation is lengthy; I assume that the plaintiff means to refer to subsection (c) of the regulation. That subsection provides a list of factors that the administrative law judge must consider when evaluating medical opinions. Among other points, that subsection provides that, "generally," more weight will be given to opinions of medical providers who have examined the claimant, who have a treating relationship with the claimant, who have longer treatment relationships, who have more knowledge about the claimant's alleged disability, whose opinions are supported by relevant evidence including medical signs and laboratory findings, whose opinions are more consistent with the record as a whole, and who specialize in treating medical issues such as the impairment alleged. 20 C.F.R. §§ 404.1527(c)(1)-5). It does *not* require that the opinions of treating physicians always be given the most weight, or that "evaluating" opinions

---

[18] At oral argument, counsel for the defendant pointed out that the award of benefits in Vermont was granted to begin in February 2013, ECF No. 20-4 at 2343, while the administrative law judge's decision in this case is dated January 25, 2012. Record at 32. Thus, the actual gap would be not one day but rather 13 months.

always be given more weight than other opinions.  *Arroyo v. Secretary of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991).

The opinions of Drs. Gold and Whitesell cited by the plaintiff, Statement of Errors at 19-20, are that the plaintiff could not, as of December 11, 2007, engage in employment, Record at 953 (Dr. Gold), and that the physician was "currently of the impression that [the plaintiff's] symptoms preclude her working at this time," *id*. at 1436 (Dr. Whitesell).  Each of these opinions addresses an issue that is reserved to the commissioner, 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1), and the opinion of a treating source on this issue is entitled to no special significance.  Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service Rulings 1983-1991* (Supp. 2014), at 114; *Roberge v. Colvin*, No. 2:13-cv-289-GZS, 2014 WL 3548985, at *5 (D. Me. July 17, 2014).  Here, the administrative law judge gave sufficient reasons for rejecting Dr. Gold's opinion.  Record at 29.[19]  That he did not mention Dr. Whitesell's opinion is harmless error, given the nature of that opinion, which, as noted, addresses the plaintiff's ability to work, an issue reserved to the commissioner.

The plaintiff also complains that the administrative law judge wrongly rejected the opinions of Dr. Graf and Dr. Newcomb, but does not explain why that rejection constituted reversible error.  Statement of Errors at 20.  The administrative law judge gave sufficient reasons for his rejection of the opinions of Dr. Newcomb, Record at 28-29, and Dr. Graf, Record at 31, both of whom examined the plaintiff as consultants.  Nothing further was required.  *See generally, e.g., O'Neill-Beal v. Colvin*, No. 1:12-cv-399-GZS, 2013 WL 5941070, at *3 (D. Me. Nov. 5,

---

[19] It is important to note as well that Dr. Gold's opinion that the plaintiff was unable to work was specifically limited to three months.  Record at 953.  An impairment's effect on the ability to perform basic work activities must be likely to last longer than 12 months in order to be considered disabling.  *Sheldon v. Colvin*, Civil No. 2:13-cv-315-DBH, 2014 WL 3533376, at *3 (D. Me. July 15, 2014).  As the defendant notes, Defendant's Written Response to Plaintiff's Statement of Errors (ECF No. 35) at 10, opinions that a claimant is disabled are irrelevant at Step 2, which is the highest step of the sequential evaluation reached by the administrative law judge in this case.  Any error by the administrative law judge in this regard can, therefore, only be harmless.

2013). The plaintiff asserts that the administrative law judge erred in relying on the opinions of "DDS nonexamining doctors who had an incomplete record," Statement of Errors at 20, but she specifies as missing from that record only evidence created after the administrative law judge issued his decision, which I have excluded from the record.

Finally, the plaintiff argues that, by rejecting the opinion of Dr. Schniewind, the administrative law judge "violates 20 CFR §404.1527, and the Substantial Evidence Rule under 42 U.S.C.A. §405(g)!!!!" *Id.* (emphasis in original). The portion of Dr. Schniewind's opinion that the plaintiff specifies as having been wrongly rejected by the administrative law judge is that the plaintiff's "alcoholism meets Section 12.09 of the Listings!!" *Id.* The Listings are considered at Step 3 of the sequential evaluation process, which the administrative law judge did not reach in this case.

The administrative law judge accepted Dr. Schniewind's opinion that the plaintiff's affective disorder was not a severe impairment. Record at 28. He gave adequate reasons for rejecting her opinion concerning the Listing for alcoholism. *Id.* That is all that was required.

## IV. Conclusion

For the foregoing reasons, the defendant's motion (ECF No. 24) to strike the plaintiff's motions to remand (ECF Nos. 21, 22, & 23) is **GRANTED**; the plaintiff's second motion to augment the record (ECF No. 20) is **DENIED**; and I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 13th day of February, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge